**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ROBERT R. KELLY, JR.,              ) | |
|                                                          ) | |
|            Petitioner,                            ) | Case No. CV 05-241-S-LMB |
|                                                          ) | |
| v.                                                    ) | **MEMORANDUM DECISION** |
|                                                          ) | **AND ORDER** |
| JO ANNE B. BARNHART,          ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
|                                                          ) | |
|            Respondent.                        ) | |
| _____) | |

Currently pending before the Court is Robert R. Kelly, Jr.'s Petition for Review (Docket No. 2) seeking review of the final decision of Respondent denying his claim for Title II Social Security disability insurance benefits. The action is brought pursuant to 42 U.S.C. § 405(g).

Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I.**

**ADMINISTRATIVE PROCEEDINGS**

Robert R. Kelly, Jr. ("Petitioner" or "Claimant") applied for a period of disability and disability insurance benefits under Title II of the Social Security Act on July 29, 2002. (AR 66). Petitioner alleged disability beginning March 30, 2001, as a result of back pain, left shoulder pain, joint pain, depression, anxiety, and abdominal pain as a result of liver dysfunction. (AR 16, 66).

**MEMORANDUM DECISION AND ORDER -1-**

Petitioner's application was denied initially and again after reconsideration. (AR 43, 51). Petitioner filed a timely request for a hearing before an Administrative Law Judge. (AR 42). ALJ Gilbert Alejandro Martinez held a hearing on March 3, 2004, at which time Petitioner, represented by counsel, appeared and testified. (AR 191). Keith Pearson, M.D., an impartial medical expert, and Anne Aastum, an impartial vocational expert, also testified. *Id*. On August 19, 2004, the ALJ issued a decision denying Petitioner's claim because he found Petitioner is capable of making a successful adjustment to work that exists in significant numbers in the national economy and is therefore not disabled. (AR 26–27).

Petitioner requested the Appeals Council review the ALJ's decision. (AR 11). The Appeals Council denied Petitioner's request on April 27, 2005, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 5).

Having exhausted his administrative remedies, Petitioner timely filed this instant action. *Petition for Review* (Docket No. 2). Petitioner requests that the ALJ's decision be reversed and benefits awarded, or, in the alternative, that this matter be remanded in order to allow the ALJ an opportunity to further evaluate the evidence. *Id.* at p. 2. Further, Petitioner requests costs and attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412. *Id*.

## II.

## BACKGROUND

At the time of the hearing before the ALJ, Petitioner was forty-two years old with a high school equivalent education. Petitioner attended an electronics program at the ITT technical institute and has past work experience as a route man for coin machines, head tech involving repairs of machines, and delivery truck driver. (AR 16–17).

## III.

## STANDARD OF REVIEW

It is undisputed that the burden of proof rests upon Petitioner to establish an entitlement to disability benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). In evaluating the evidence at an administrative hearing, the ALJ must follow a five-part sequential process. 20 C.F.R. §§ 404.1520, 416.920 (2005). The second part of that process involves a determination regarding whether the claimant has a "severe impairment." 20 C.F.R. § 416.905(a) (2006). If no "severe" impairment is found, the claimant will be found not to be disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

To be upheld, the Commissioner's decision must be supported by substantial evidence and be based on proper legal standards. 42 U.S.C. § 405(g) (2005); *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings of the ALJ as to any fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g); *Vidal v. Harris*, 637 F.2d 710, 712 (9th Cir. 1981). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987). Reviewing federal courts must bear in mind that the Social Security Act is remedial and should be construed liberally and "not so as to withhold benefits in marginal cases." *Id*. at 1095 (citation omitted).

The only issue presented in the instant appeal is whether the ALJ's determination that Petitioner's testimony was not credible was a determination supported by substantial evidence and based on application of proper legal standards. *Petitioner's Brief*, p. 6 (Docket No. 10).

**MEMORANDUM DECISION AND ORDER -4-**

## IV.

## DISCUSSION

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920.

**A.     Sequential Process**

The first step in the sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the answer is in the affirmative, disability benefits are denied. 20 C.F.R. § 404.1520(b). In the instant action, the ALJ concluded that Petitioner has not engaged in substantial gainful activity since his alleged onset date. (AR 18).

The second step requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If the answer is in the negative, disability benefits are denied. 20 C.F.R. § 404.1520(c). In the instant action, the ALJ found that Petitioner's multilevel cervical degenerative changes most prominent at C5-C6 with severe bilateral foraminal narrowing, mild to moderate foraminal narrowing at L4-L5 with no nerve root compression, fatty liver, and minimal degenerative cystic changes in the humeral head of the left shoulder and mild degenerative changes about the greater tuberosity in the right shoulder, and depression are considered "severe" based on the requirements in the Regulations 20 C.F.R. § 404.1520(c). (AR 26).

The third step in the evaluation process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P,

**MEMORANDUM DECISION AND ORDER -5-**

Appendix 1.  20 C.F.R. § 404.1520(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  20 C.F.R. § 404.1520(d).  In this respect, the ALJ concluded that Petitioner is not subject to any impairment or combination of impairments that meets or equals the requirements of the Listing of impairments listed in Appendix 1, Subpart P, Regulations No. 4.  (AR 20).

      The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  In this respect, the ALJ found that, based upon Petitioner's residual functional capacity, he is capable of performing a significant range of light work as defined in 20 C.F.R. § 404.1567.  (AR 25).  Further, the ALJ concluded that Petitioner is unable to perform any of his past relevant work.  (AR 27).

      In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  In this respect, the ALJ found that, although Petitioner's exertional limitations do not allow him to perform the full range of light work, there are a significant number of jobs in the national economy that he could perform, such as a cashier II and parking lot attendant.  (AR 27).  Therefore, the ALJ concluded that Petitioner was not under a disability as defined in the Social Security Act at any time through the date of his decision.  *Id*.

**MEMORANDUM DECISION AND ORDER -6-**

B.       Analysis

In the instant action, the ALJ acknowledged that "the claimant has medically determinable impairments that would cause some pain."  (AR 21).  However, the ALJ concluded that

> to the extent the claimant alleges impairments so severe as to preclude all sustained work, the undersigned does not find him credible in light of his limitations appear out of proportion to the medical findings, his pain can be controlled with treatment without any side effects from his medication, and his daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations.

(AR 21–22).  Thus, the ALJ concluded that Petitioner's testimony regarding his alleged physical limitations was not credible.  In addition, the ALJ concluded that Petitioner's "course of medical treatment is not consistent with mental allegations and does not lend to his credibility."  (AR 24). Petitioner argues that the ALJ's credibility determination, both as to Petitioner's physical and mental limitations, was improper.  *See Petitioner's Brief*, p. 6 (Docket No. 10).

In deciding whether to accept a claimant's subjective symptom testimony, an ALJ must perform two stages of analysis.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  In the first stage, the ALJ must determine whether a claimant, who alleges disability based on subjective symptoms, has produced objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Id*.  In the second stage, if the claimant produced the required objective medical evidence, the ALJ must determine whether there is evidence of malingering.  *Id.*  If not, the ALJ can reject the claimant's testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so."  *Id*.

**MEMORANDUM DECISION AND ORDER -7-**

In this case, as to Petitioner's alleged *mental* limitations, the ALJ apparently concluded that Petitioner had not produced objective medical evidence of a mental impairment. (*See* AR 24) ("[T]he undersigned does not find the consultative psychological evaluation supports memory problems."). Accordingly, in regard to Petitioner's alleged mental limitations, the first stage of the symptom-credibility analysis is at issue, i.e., whether the ALJ's determination as to the lack of objective medical evidence was supported by substantial evidence and based on proper legal standards.

As to Petitioner's alleged *physical* limitations, however, only the second stage of the symptom-credibility analysis is at issue. (*See* AR 21–22) (acknowledging that Petitioner has "medically determinable impairments" before concluding that Petitioner's testimony regarding his physical limitations is not credible). Thus, and because the ALJ did not mention any evidence of malingering, the issue in regard to Petitioner's physical-limitation testimony is whether the ALJ offered specific, clear, and convincing reasons for rejecting Petitioner's testimony about the severity of his symptoms.

    **1.**    <u>**Medical Evidence**</u>

To support his allegations of mental limitations, Petitioner relies on an evaluation by Richard T. Sonnenberg, Ph.D., and a third-party questionnaire completed by Petitioner's wife. *Petitioner's Brief*, pp. 6–7, 9–10 (Docket No. 10). Of these, only Dr. Sonnenberg's evaluation could qualify as objective *medical* evidence, though the ALJ considered the third-party questionnaire as well. (*See* AR 24).

In addressing Dr. Sonnenberg's evaluation, the ALJ concluded that it did not support Petitioner's testimony regarding the severity of any mental limitations. *Id*. Specifically, the ALJ noted that "Dr. Sonnenberg's evaluation establishes the claimant's immediate, recent, and

**MEMORANDUM DECISION AND ORDER -8-**

remote memory was grossly intact," and that "it was Dr. Sonnenberg's opinion that he would not experience other than mild difficulties with work related mental activities such as understanding, remembering, sustaining concentration, persistence, interacting socially, and adaptability." (AR 24) (citing *Exhibit 2F/5* (AR 112)).  Thus, while Dr. Sonnenberg noted that Petitioner had "marked difficulties" in the areas of attention and concentration, *Exhibit 2F/4* (AR 111), he nonetheless concluded that Petitioner would not experience other than mild difficulties with work-related mental activities.  *Exhibit 2F/5* (AR 112).

Petitioner argues, in essence, that the ALJ improperly relied upon Dr. Sonnenberg's conclusion as to mild difficulties with work-related mental activities because Dr. Sonnenberg had made other conclusions that were not in accord with the work-related mental activities conclusion.  *See Petitioner's Brief*, p. 7 (Docket No. 10).  Specifically, Petitioner argues that Dr. Sonnenberg's conclusion, i.e., that "the claimant would not experience other than mild difficulties with work-related mental activities," was qualified in that the conclusion was only "[w]ith regard to the questions specifically put forth on the authorization."  *Id.*; *Exhibit 2F/5* (AR 112).  However, Dr. Sonnenberg's full statement was as follows: "With regard to the questions specifically put forth on the authorization, *based on these evaluation findings*, it would be my opinion that the claimant would not experience other than mild difficulties with work-related mental activities . . . ."  *Exhibit 2F/5* (AR 112) (emphasis added).  Accordingly, Dr. Sonnenberg based his conclusion on both "the questions specifically put forth" as well as his evaluation findings, which would include his earlier evaluation that "claimant displayed some marked difficulties in" attention and concentration.  *See Exhibit 2F/4–5* (AR 111–12).  Accordingly, the observation of Petitioner's "marked difficulty" in attention and concentration was taken into

**MEMORANDUM DECISION AND ORDER -9-**

consideration in Dr. Sonnenberg's conclusion that Petitioner would not experience other than mild difficulties with work-related mental activities. Thus, the ALJ's reliance on Dr. Sonnenberg's conclusion that Petitioner would not experience other than mild difficulties with work-related mental activities was not improper.

Again, Dr. Sonnenberg's evaluation was the only potential medical evidence Petitioner provided in support of his testimony regarding the severity of his mental limitations. Further, though Dr. Sonnenberg makes several observations that could support a finding of mental limitations, his overall conclusion as to Petitioner's mental limitations and their affect on work-related mental activities, did not support Petitioner's testimony. Thus, the ALJ's apparent conclusion, i.e., that Petitioner had not provided objective medical evidence in support of his testimony regarding the severity of his mental limitations, was not without substantial evidentiary support or based upon improper legal standards. Accordingly, the ALJ's credibility determination as to Petitioner's mental limitations shall be upheld.

   2. **<u>Testimony Regarding Severity of Physical Limitations</u>**

The ALJ gave three reasons for rejecting Petitioner's testimony regarding the severity of his physical symptoms, i.e., the severity of his pain: (1) Petitioner's purported "limitations appear out of proportion to the medial findings," (2) Petitioner's "pain can be controlled with treatment without any side effects from his medications," and (3) Petitioner's "daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 22). For the ALJ's credibility determination with regard to Petitioner's physical-limitations testimony to be upheld, these reasons must be clear and convincing, which requires that they be supported by substantial evidence and based on proper legal standards.

**MEMORANDUM DECISION AND ORDER -10-**

### a. Limitations and Medical Findings

The ALJ's first reason for concluding that Petitioner's testimony of the severity of his physical symptoms was not completely credible was that the physical limitations appeared out of proportion to the medical findings. *Id*. In concluding that Petitioner's limitations appear out of proportion to the medical findings, the ALJ noted that while "[t]he medical evidence reflects a history of low back pain . . . as early as 1998," Petitioner continued to work despite his back pain until March 30, 2001. *Id*. Further, the ALJ recognized that Petitioner did not seek medical treatment through the Veterans Administration Medical Center ("VAMC") for his low back pain until September 17, 2001. *Id*. The ALJ went on to cite further evidence in the record by noting that Petitioner's

> physical examination showed he had full range of motion, normal pulses, and a normal gait. With straight leg raises, he had some stretching pain in the thighs and calf, but no true straight leg raises. He was able to raise his leg to 80 degrees. Hip range of motion was within normal limits. He had minimal tenderness in the sacroiliac. No atrophy was noted. He was noted to have back flexion to 90 degrees with 20 degrees extension and able to toe and heel walk with no problems. X-ray of the lumbar spine showed transitional lumbosacral segment present, probably lumbarized S1, but no other significant abnormality was noted.

*Id*. (citing *Exhibit 3F/18* (AR 130)). In addition, the ALJ discussed numerous other medical exhibits, (e.g., *Exhibits 3F/7–11* (AR 119–23)), each of which support his conclusion that Petitioner's condition was not so severe as to support Petitioner's allegation that he could only lift five pounds, sit for thirty minutes at a time, stand for fifteen to twenty minutes at a time, and walk for fifty to 100 yards. (*See* AR 22–23).

Given the ALJ's detailed explanation of the first reason for the credibility finding, this reason constitutes a clear and convincing reason for the credibility finding.

### b.     Treatment and Side Effects

The ALJ's second reason for concluding that Petitioner's testimony regarding the severity of his physical limitations was not completely credible was that the record evidence indicated that Petitioner's pain could be controlled with treatment without side effects.  (AR 22). Petitioner challenges this reason, contending that the ALJ improperly "dismisses the Petitioner's testimony that his pain medications make him sleepy and he has related fatigue, which is a known side-effect of pain medications." *Petitioner's Brief*, p. 8 (Docket No. 10).  Apparently, Petitioner is referring to that part of the hearing when he testified that "sometimes when [he] take[s] this medication that [he's] on it makes [him] drowsy."  (AR 218).  More specifically, when asked whether his medications have any side effects, he replied that "sleepiness pretty much is most of it."  (AR 219–20).  Notably, Petitioner has not pointed to any objective medical evidence to support his contention that his medication causes drowsiness.

The ALJ has a responsibility to develop the record and interpret and consider the evidence.  *See Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). "However, in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'"  *Id.* (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)).

In this case, the ALJ did not mention the possibility that Petitioner's medication may sometimes make him drowsy, but nonetheless stated that Petitioner's pain could "be controlled with treatment without any side effects."  (AR 22).  Because the ALJ did not support this reason with substantial evidence or otherwise address Petitioner's contention that he did experience a side effect, though minor, this reason, while clear, does not constitute a convincing reason for the credibility determination.

**MEMORANDUM DECISION AND ORDER -12-**

### c. Daily Activities and Limitations

In supporting the third reason for the credibility determination regarding Petitioner's physical limitations testimony, the ALJ discussed Petitioner's daily activities as follows:

> The claimant's daily activities are not significantly disrupted by impairment symptoms or lack of ability to sustain activity over the course of a day.  As presented through a daily activities questionnaire, he is independent in his personal needs and is capable of household maintenance although his wife mows the lawn and does the yard work.  He cares for his 3 year-old son.  He sometimes cooks, goes grocery shopping once a week, has a driver's license and either drives or rides his bicycle during daily excursions from his home.  He maintains regular contact with friends and neighbors and limited contact with relatives.  He goes to the movies occasionally and attends church on Sundays.  He reports he watches television for about two hours a day.  Occasionally, he spends time reading books, magazines, newspapers, and educational materials. (Exhibit 1E/11).  Moreover, as presented to Dr. Sonnenberg, the consultative psychological examiner, the claimant was taking an active role in the parenting of his child and maintained some friendships in the community (Exhibit 2F/3).  In fact, Dr. Sonnenberg assessed a GAF rating of 70, which indicates that he has only mild symptoms but generally functions pretty well.  (<u>Diagnostic and Statistical Manual of Mental Disorders</u>, Fourth Edition).  (Exhibit 2F)  Overall, his daily activities are not significantly limited and do not lend to his credibility.

(AR 24).

Of course, "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Wright v. Sullivan*, 900 F.2d 675, 682 (3rd Cir. 1990) (citing *Smith v. Califano*, 637 F.2d 968, 971–72 (3rd Cir. 1981)).  Even so, Petitioner's described daily activities are not limited to the extent one would expect if, as Petitioner alleges, he could only lift five pounds, sit for thirty minutes at a time, stand for fifteen to twenty minutes at a time, and walk for fifty to 100 yards.  (*See* AR 22).  Accordingly, and because the ALJ based this third reason on substantial evidence supported by the record, it

**MEMORANDUM DECISION AND ORDER -13-**

constitutes a clear and convincing reason supporting the ALJ's credibility determination regarding Petitioner's testimony as to the severity of his physical limitations.

### d. Credibility

As discussed, at least the first and third reasons given by the ALJ in support of the credibility determination regarding Petitioner's physical-limitations testimony were well-supported by record evidence and well-reasoned. Accordingly, the ALJ supported the credibility determination regarding Petitioner's physical-limitations testimony with clear and convincing reasons. Thus, the credibility determination will not be overturned.

## C. Conclusion

After carefully reviewing the record, the Court concludes that the ALJ did not err as a matter of law when he rejected Petitioner's credibility regarding the severity of his mental and physical limitations because (1) Petitioner did not meet his burden to provide objective medical testimony supporting his mental-limitations testimony and (2) the ALJ gave clear and convincing reasons, supported by the record, for discrediting Petitioner's physical-limitations testimony. In so concluding, the Court is fully aware that reasonable minds may differ in the interpretation and application of the facts presented in a disability proceeding, and that the courts do not simply "rubber stamp" the ruling of the ALJ. However, it is not the role of a reviewing court to act as a fact finder; that is the role of the ALJ. *See Hall*, 602 F.2d at 1374. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. Further, the Ninth Circuit has recognized that "[c]redibility determinations are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). Where, as here, the ALJ has made specific findings justifying a decision to discount and reject certain allegations made by Petitioner regarding symptoms and

their functional effect on daily activities, and those findings are supported by substantial evidence in the record, as they are in this action, a reviewing court's role is not to second-guess that decision.  The ALJ's findings to reject Petitioner's credibility are sufficiently specific to allow this Court to conclude that the ALJ's decision is based on permissible grounds and that the ALJ did not arbitrarily discredit Petitioner's testimony.  *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).  Thus, after careful review of the record and being otherwise fully advised, the Court concludes that the findings of the ALJ were supported by substantial evidence and based on proper legal standards.  Accordingly, this Court will not substitute its interpretation or judgment for that of the ALJ in reaching his decision, and the Commissioner's decision is upheld.

V.

ORDER

Based on the foregoing, IT IS HEREBY ORDERED that the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety with prejudice.

DATED:  **August 10, 2006**.

Larry M. Boyle
United States District Court

MEMORANDUM DECISION AND ORDER -15-